**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **XSTAVION BROCKTON,** | ) | |
| **AIS 312123,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-745-WKW-CWB** |
| | ) | **[WO]** |
| **STATE OF ALABAMA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Xstavion Brockton ("Brockton") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 wherein he challenges his convictions for rape and sodomy in the first degree. (Doc. 1).[1]  For the reasons discussed below, the Magistrate Judge recommends that Brockton's petition be denied without an evidentiary hearing and that this case be dismissed with prejudice.

I.      **Background**

A.      **State Court Proceedings**

In November 2017, Brockton was found guilty by a Pike County, Alabama jury on two counts of first-degree rape by being over 16 years of age and having sexual intercourse with a child under 12 years of age (Ala. Code § 13A-6-61(a)(3)), one count of first-degree rape by forcible compulsion (Ala. Code § 13A-6-61(a)(1)), one count of first-degree sodomy by being over 16 years of age and having deviate sexual intercourse with a child under 12 years of age (Ala. Code § 13A-6-63(a)(3)), and one count of first-degree sodomy by forcible compulsion

---

[1] References to documents filed in this proceeding are designated as "Doc." Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and may not correspond to pagination on the copies as presented for filing.

(Ala. Code § 13A-6-63(a)(1)).[2]   (Doc. 8-5 at pp. 68-69).   On January 3, 2018, the trial court sentenced Brockton to concurrent 25-year terms of imprisonment.   (Doc. 8-5 at p. 131).   Brockton filed a motion for new trial, which was denied by operation of law on May 1, 2018.   (Doc. 8-1 at pp. 143-50).

Brockton's notice of appeal was untimely filed and dismissed by the Alabama Court of Criminal Appeals.   (Doc. 8-6 at pp. 2-3).   Brockton then filed a Rule 32 petition seeking leave to file an out-of-time appeal.[3]   (Doc. 8-6 at pp. 11-13).   The trial court granted the petition and allowed Brockton to appeal.   (Doc. 8-6 at p. 16).   Brockton then pursued a direct appeal asserting the following claims:

1.   The trial court erred in consolidating the six counts in the indictment without proper pretrial notice.

2.   The evidence was insufficient to sustain the convictions.

3.   The trial court erred in not granting a new trial when testimony at the hearing on the motion for new trial revealed juror misconduct that prejudicially influenced the jury's verdict.

(Doc. 8-13 at pp. 15-35).

On August 9, 2019, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming Brockton's convictions and sentence.   (Doc. 8-9).   Brockton applied for rehearing, which was overruled.   (Doc. 8-10).   His ensuing petition for writ of certiorari was denied by the Alabama Supreme Court on April 10, 2020.   (Docs. 8-11 & 8-12).

---

[2] The jury found Brockton not guilty of one count of first-degree sodomy.

[3] *See* Ala. R. Crim. P. 32.1(f) (providing means for a petitioner to seek an out-of-time appeal where the failure to appeal within the allowed time was without fault on the part of the petitioner).

B.    **Brockton's § 2254 Petition**

On September 15, 2020, Brockton filed this § 2254 petition in which he asserts the following claims:

1.    That he was denied the right to conduct full cross-examination of witnesses.

2.    That he was deprived of a fair trial after the trial court consolidated the six counts in the indictment without proper notice.

3.    That the State's evidence was insufficient to sustain his convictions.

4.    That the trial court erred in not granting a new trial when testimony at the hearing on his motion for new trial revealed juror misconduct that prejudicially influenced the jury's verdict.

(Doc. 1 at pp. 15-36).

II.    **Discussion**

A.    **Exhaustion and Procedural Default**

Brockton asserts that he was denied his right to conduct full cross-examination of witnesses at trial. (Doc. 1 at pp. 15-17). Respondents argue that Brockton did not present this claim to the state court and that the claim is therefore unexhausted and procedurally defaulted for purposes of federal habeas corpus. (Doc. 8 at pp. 5-7).

A petitioner must exhaust all available state-court remedies before filing a federal habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "Exhaustion requires that 'state prisoners ... give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (quoting *O'Sullivan*, 526 U.S. at 845). To exhaust a claim challenging a conviction and/or sentence issued by an Alabama state court, the petitioner must first present the claim through a direct appeal or through

3

a Rule 32 post-conviction petition and appeal. *See Smith v. Jones,* 256 F.3d 1135, 1140-41 (11th Cir. 2001). The petitioner must next seek rehearing in the Alabama Court of Criminal Appeals and file a petition for writ of certiorari in the Alabama Supreme Court. *See id.*; *see also* Ala. R. App. P. 39 & 40. Habeas claims not exhausted in state court are deemed procedurally defaulted if presentation of the claims in state court would currently be barred by state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] ... there is a procedural default for purposes of federal habeas."); *see also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003).

### B. Brockton's Cross-Examination Claim is both Unexhausted and Procedurally Defaulted.

The record reflects that Brockton did not assert in state court that he was denied the right to conduct a full cross-examination of witnesses. Respondents thus are correct that Brockton failed to exhaust the claim by invoking "one complete round of the State's established appellate review process.'" *Mason*, 605 F.3d at 1119. Moreover, it is now too late for Brockton to present the claim in state court, as it would be barred by state procedural rules. *Henderson*, 353 F.3d at 891. Accordingly, the claim is unexhausted and procedurally defaulted.

### 1. Exceptions to Procedural Default

A habeas petitioner can overcome a procedural default either by showing cause for the default and resulting prejudice, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or by establishing a "fundamental miscarriage of justice," which requires a colorable showing of actual innocence, *Schlup v. Delo*, 513 U.S. 298, 324–27 (1995). Cause for a procedural default ordinarily turns on whether the petitioner can show that some objective factor external to the defense impeded efforts

to comply with the state's procedural rules.  *Murray*, 477 U.S. at 488.  Examples of external impediments include a factual or legal basis for a claim not being reasonably available, interference with the defense by government officials, or constitutionally ineffective assistance of counsel.  *Id*. To establish prejudice, a petitioner must show that the errors worked to his "actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions."  *Id.* at 494 (internal quotations and emphasis omitted).

Prisoners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 327.  "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case."  *House v. Bell*, 547 U.S. 518, 538 (2006).  As the Supreme Court observed in *Schlup*:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. ...  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

### 2.    Brockton Shows No Exception to Excuse His Procedural Default.

Brockton offers no grounds as cause for excusing his procedural default.  Nonetheless, he contends that the court's failure to review the merits of his claim would create a "manifest injustice" by extinguishing his Sixth Amendment right to confrontation.  (Doc. 12 at pp. 1-2). In the context of exceptions to procedural default, the Eleventh Circuit considers an allegation of "manifest injustice" as an assertion of a "fundamental miscarriage of justice," which under *Schlup* requires the petitioner to make a colorable showing of actual innocence.  *See, e.g., Hill v. Jones*,

81 F.3d 1015, 1023 (11th Cir. 1996); *Crayton v. Sec'y, Dep't of Corr.*, No. 17-15290-C, 2019 WL 2374452, at *6 (11th Cir. May 15, 2019).  However, Brockton does not assert actual innocence or present any new reliable evidence of actual innocence.  *Schlup*, 513 U.S. at 324.  Because Brockton fails to make a colorable claim of actual innocence, his assertion of "manifest injustice" does not excuse his procedural default, and his cross-examination claim is foreclosed from federal habeas review.

### C.      Claims Adjudicated on the Merits

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes "a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (quotes and cite omitted).  The court cannot disturb state court rulings on fully adjudicated constitutional issues unless they:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This is a highly deferential, "difficult to meet" standard that petitioners must overcome.  *Harrington v. Richter,* 562 U.S. 86, 102 (2011); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  A federal court on habeas review "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Greene v. Upton*, 644 F.3d 1145, 1154 (11th Cir. 2011) (citation omitted).  Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (quoted in *Hill v. Humphrey*, 662 F.3d 1335, 1345 (11th Cir. 2011) (en banc)). Moreover, if a state court's decision is unaccompanied by any legal analysis or explanation, the petitioner must still show there was no reasonable basis for the state court to deny relief. *Means v. Sec'y, Dep't of Corrs.*, 433 F. App'x 852, 853 (11th Cir. 2011) ("§ 2254(d) applies even to summary state court opinions, as well as to opinions that do not cite Supreme Court precedent (citing *Harrington*, 562 U.S. at 98-99); *see also Johnson v. Sec'y, Dep't of Corrs.*, 643 F.3d 907, 930 n.9 (11th Cir. 2011).

Federal courts also must presume state court factual determinations to be correct, and petitioners must rebut that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

### 1.      Consolidation of Counts in Indictment

Brockton claims that he was deprived of a fair trial after the trial court consolidated the six counts in the indictment without notice.  (Doc. 1 at pp. 18-21).  According to Brockton, he was not informed that his cases were consolidated until a week before trial, by which time his motion to sever the cases was untimely.  (*Id*. at p. 18).  Brockton asserts that, in a trial where all the charges against him were tried together, there was a spillover effect of evidence regarding different incidents that prejudicially influenced the jury's deliberations and verdict.  (*Id*. at p. 19).  He further argues that he was unduly burdened by having to defend against six different allegations in a single proceeding.  (*Id*.).

In its memorandum opinion affirming Brockton's convictions, the Alabama Court of Criminal Appeals set forth the factual background for such claim as follows:

> The record indicates that on January 26, 2016, Brockton was arrested and charged with three counts of first-degree rape and three counts of first-degree sodomy. On January 27, 2016, his trial counsel filed a notice of appearance. The grand jury returned a six-count indictment against Brockton on June 20, 2016, for three counts of first-degree rape and three counts of first-degree sodomy. On August 16, 2016, Brockton waived arraignment and entered a plea of not guilty. On November 1, 2017, Brockton filed an oral motion to sever the counts of the indictment on the grounds that the failure to sever the offenses would be overly prejudicial; and that he did not have notice that the counts would be consolidated for trial because each count in the indictment was assigned a separate case number. Following a hearing, the circuit court orally denied Brockton's motion to sever. The circuit court found that Brockton's motion to sever was untimely filed and without merit, stating:
>
> > "[T]hey are, in fact, consolidated because they arise from one indictment. And the obligation would have been on you to have moved for them to be severed. ... [The assignment of separate case numbers is] just an accounting thing. And that's the way we do it; although, I understand we're going back to the old way of doing it where we have one case number. That was done for statistical reasons."
>
> (Corrected Second Supp. R. 5–6.)

(Doc. 8-9 at p. 3).

The Alabama Court of Criminal Appeals went on to address the merits of the claim in light of Alabama's rules for joinder and severance of criminal offenses—finding that the trial court properly denied Brockton's motion to sever as untimely and that, in any event, Brockton failed to demonstrate his entitlement to severance:

> Rule 13.3(d), Ala. R. Crim P., states, "Offenses and defendants joined in the same indictment, information, or complaint shall be jointly tried unless severed as provided by Rule 13.4[, Ala. R. Crim. P.]" Rule 13.4(b), Ala. R. Crim. P. provides:
>
> > "A defendant's motion to sever offenses or defendants must be made not more than seven (7) days after arraignment or filing of a written plea of not guilty prior to trial, or, in the event the court has ordered charges or defendants to be tried jointly, pursuant to Rule 13.3, then within seven (7) days of the court's order, in any event, prior to trial.

> If, after the expiration of these time periods, a ground not previously
> known arises, or becomes known, either before or during trial, and
> that ground could not have been discovered previously through the
> exercise of due diligence, the defendant may move for severance of
> all counts, but must do so at the earliest opportunity. The right to
> move for severance is waived if a proper motion is not timely made."

Although Brockton claims that he was not given notice that the cases were going
to be consolidated until 7 days prior to trial, Brockton's offenses were joined in a
single complaint and indictment. Under Rule 13.3(d), Ala. R. Crim. P., offenses
joined in a single complaint or indictment "shall be jointly tried unless severed as
provided by Rule 13.4[, Ala. R. Crim. P.]" Thus, Brockton's offenses were joined
by rule, not by the circuit court. Because Brockton did not file his motion to sever
in this case until well after the time limitation in Rule 13.4(b), Ala. R. Crim. P., had
expired, his motion was untimely, and his right to move for severance was waived.

Moreover, even if Brockton had not waived his right to move for severance, he is
not entitled to relief on this claim. *See Ex parte Pincheon*, 751 So. 2d 1219
(Ala. 1999) (holding that compelling prejudice required severance despite the fact
that the motion to sever was untimely filed); *Hinkle v. State*, 86 So. 3d 441, 445
(Ala. Crim. App. 2011) (addressing propriety of trial court's denial of motion to
sever even though motion was untimely filed where trial court noted at hearing on
motion that it was accepting the motion as having been timely filed).

Rule 13.3(a), Ala. R. Crim. P. provides:

> "(a) Offenses. Two or more offenses may be joined in an
> indictment, information, or complaint, if they:

> > "(1) Are of the same or similar character; or

> > "(2) Are based on the same conduct or are otherwise
> > connected in their commission; or

> > "(3) Are alleged to have been part of a common
> > scheme or plan."

"Alabama law places upon an appellant the burden to prove that he suffered specific
and compelling prejudice in order to secure a reversal based on the trial court's
ruling on the motion to sever." *Tariq-Madyun v. State*, 59 So. 3d 744, 750 (Ala.
Crim. App. 2010) (citing *Ex parte Hinton*, 548 So. 2d 562, 566 (Ala. 1989)).

In this case, Brockton has only made a bare assertion that joinder of the counts for
trial was unduly prejudicial. He cites nothing in the record to support this vague
claim. Additionally, this Court's review of the record does not reveal that the jury
was either overloaded with prejudicial information or that its verdicts were based

on anything other than the evidence presented for each count.  Thus, Brockton has failed to meet his burden of establishing any specific and compelling prejudice that resulted from the denial of his motion to sever.

(Doc. 8-9 at pp. 3–5).

The joinder of criminal offenses and decisions to grant or deny severance are governed by Rules 13.3 and 13.4 of the Alabama Rules of Criminal Procedure.  In denying Brockton's motion for severance, the Alabama courts applied state law.  This court must accept as binding the state courts' interpretation of state rules and law on joinder and severance of criminal trials.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reemphasizing "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  Under Alabama's Rules of Criminal Procedure, joint trial is the default posture for offenses charged in a single indictment.  *See* Ala. R. Crim. P. 13.3(d) ("Offenses and defendants joined in the same indictment, information, or complaint shall be jointly tried unless severed as provided by Rule 13.4[, Ala. R. Crim. P.]").  The Alabama Court of Criminal Appeals held that because the six counts in Brockton's indictment were consolidated by rule from the outset, there was no order of joinder entered by the trial court about which Brockton was entitled to be notified.  And because Brockton did not move to sever the charges until a week before trial, the state court found his motion to sever as being untimely under Ala. R. Crim. P. 13.4(b).  Such a state court interpretation of state laws and rules provides Brockton no basis for federal habeas relief.  *Beverly v. Jones*, 854 F.2d 412 (11th Cir. 1988); *see also Barclay v. Florida*, 463 U.S. 939, 957-58 (1983).

The failure to grant a severance may rise to the level of a constitutional violation only where it renders a trial fundamentally unfair and, hence, violative of due process.  *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993); *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007).  Where a petitioner alleges that he was deprived of a fair trial due to the denial of a severance, he

must demonstrate specific and compelling prejudice that the trial court could not protect against and that caused him to receive an unfair trial.  *United States v. Butera*, 677 F.2d 1376, 1385 (11th Cir. 1982).  A mere showing of some prejudice is insufficient.  *United States v. Wilson*, 657 F.2d 755, 765 (5th Cir. 1981).

In its alternate holding addressing the merits of Brockton's severance claim, the Alabama Court of Criminal Appeals found that Brockton had made only a bare assertion that joinder of the counts for trial was unduly prejudicial and that he had failed to meet his burden of establishing specific and compelling prejudice.  (Doc. 8-9 at p. 5).  The state court noted that Brockton had cited nothing in the record to support his claim of prejudice.  (*Id.*).  And the state court found that its review of the record did not reveal that the jury was overloaded with prejudicial information or that its verdicts were based on anything other than the evidence presented for each count.  (*Id.*).

The finding by the Alabama Court of Criminal Appeals on Brockton's severance claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor did the state court's finding result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Brockton's contention that, if the jury in his non-severed trial were to believe he committed one of the charged offenses, then the jury could be led improperly to believe by that fact alone that he committed the other charged offenses, is not enough to demonstrate specific and compelling prejudice.  "This type of spillover is standard fare whenever counts involving discrete incidents are linked in a single indictment. ... [S]uch a garden variety side effect, without more, is insufficient to require severance."  *United States v. Taylor*, 54 F.3d 967, 974 (1st Cir. 1995).  Brockton thus is not entitled to federal habeas relief on the consolidation claim.

### 2.       Sufficiency of the Evidence

Brockton claims, as he did on direct appeal, that the evidence was insufficient to sustain his convictions.  (Doc. 1 at pp. 22-29).  Specifically, he argues that the State failed to prove that, at the time of the offenses, he was 16 years old or older and the victim was under the age of 12 years.[4]  (*Id*. at pp. 22–23).  In addition, he claims that the jury's verdict was contrary to the weight of the evidence and that the victim's testimony was not credible.  (*Id*. at pp. 22, 25-27).

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970).  Habeas relief on the merits of a claim of legally insufficient evidence is appropriate under § 2254 only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." …  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 318-19 (emphasis in original; citations omitted); *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).  To be sufficient, the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984).

---

[4] Brockton's sufficiency argument pertains to his convictions under Ala. Code §§ 13A-6-61(a)(3) and 13A-6-63(a)(3).  Ala. Code § 13A-6-61(a)(3) states that "[a] person commits the crime of rape in the first degree if ... [h]e  being 16 years or older, engages in sexual intercourse with a member of the opposite sex who is less than 12 years old."  Ala. Code § 13A-6-63(a)(3) states that "[a] person commits the crime of sodomy in the first degree if ... [h]e ... being 16 years or older, engages in deviate sexual intercourse with a person who is less than 12 years old."

The Alabama Court of Criminal Appeals analyzed Brockton's sufficiency claim under the standard in *Jackson*. Specifically, the state court found that Police Captain Sonny Schreiber gave testimony indicating the ages of Brockton and the victim at the time of the offenses and that the victim testified that when she was between 10 and 11 years old, Brockton (who was then 16 years old) forced her to perform oral sex and then forcibly had sex with her.  (Doc. 8-9 at p. 8).  Thus, the evidence was sufficient to establish that Brockton was 16 years old or older and that the victim was under the age of 12 years at the time of the offenses.

The finding by the Alabama Court of Criminal Appeals on Brockton's sufficiency claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor did the state court's finding result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Brockton thus is not entitled to habeas relief.

Brockton also argues that the jury's verdict was contrary to the weight of the evidence and that the victim's testimony was not credible.[5]  (Doc. 1 at pp. 22, 25-27).  The Alabama Court of Criminal Appeals rejected the argument as follows:

> The remainder of Brockton's argument on this issue refers to the weight of the evidence.
>
> > "[T]his Court will not upset the jury's verdict except in extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and unjust.  *Deutcsh v. State*, 610 So. 2d 1212, 1234–35 (Ala. Cr. App. 1992).  This Court will not substitute itself for the jury in determining the weight and probative force of the evidence.  *Benton v. State*, 536 So. 2d 162, 165 (Ala. Cr. App. 1988)."

---

[5] Presumably, Brockton's arguments apply to all five of his convictions.

*May v. State*, 710 So. 2d 1362, 1372 (Ala. Crim. App. 1997). Furthermore, "[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." *Smith v. State*, 698 So. 2d 189, 214 (Ala. Crim. App. 1996), aff'd, 698 So. 2d 219 (Ala. 1997).

The victims credibility as a witness goes to the weight to be given to each witness's testimony, which is a matter within the province of the jury. *See Poole v. State*, 650 So. 2d 541, 543 (Ala. Crim. App. 1994) ("The credibility of the 11-year-old victim was an issue for the jury"). Further, this case is not one of the "extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and unjust." *May*, 710 So. 2d at 1372 (citing *Deutsh*, 610 So. 2d at 1234–35). Consequently, this Court will not re-weigh the evidence, and this issue does not entitle [Brockton] to relief.

(Doc. 8-9 at pp. 8-9).

A federal court cannot grant habeas relief on grounds that a state court jury verdict is contrary to the weight of the evidence. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985); *see also Muldrow v. Sec'y, Dep't of Corr.*, No. 8:18-CV-515-T-35TGW, 2020 WL 6565080, at *5 (M.D. Fla. Nov. 9, 2020). "Verdicts of state courts are not subject to challenge in the federal courts based on an assertion that they are against the weight of the evidence. The court may examine only the legal sufficiency of the evidence to support the verdict of guilty, not whether the verdict was against the overwhelming weight of the evidence." *Carmichael v. Davenport*, No. 2:12CV138-MHT WO, 2014 WL 1681708, at *4 (M.D. Ala. Apr. 28, 2014). Further, "federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). "It is beyond cavil that a reviewing court must defer to the trier-of-fact's assessments of witness credibility." *Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 312–13 (W.D.N.Y. 2011) (citing *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility.")). Accordingly, Brockton is entitled to no relief on those grounds.

14

### 3.      Allegations of Juror Misconduct

Brockton claims the trial court erred in not granting a new trial when testimony at the hearing on his motion for new trial revealed juror misconduct that prejudicially influenced the jury's verdict.  (Doc. 1 at pp. 29-35).  As he did on direct appeal, Brockton asserts the following instances of juror misconduct:  (1) two jurors improperly used their cell phones during the trial; (2) one juror was asleep during the trial; and (3) the jury foreperson, Juror #19, may have overheard and taken notes on a prejudicial conversation that occurred in the hallway outside the courtroom between the victim's brother and another individual.  (*Id.* at pp. 29-31).  According to Brockton, these alleged instances of juror misconduct were prejudicial and deprived him of a fair trial. (*Id.* at p. 29).

In its memorandum opinion affirming Brockton's convictions, the Alabama Court of Criminal Appeals set forth the factual background for this claim as follows:

> After the trial, Brockton filed a motion for new trial in which he alleged, among other things, several instances of juror misconduct.  To support these allegations, Brockton filed affidavits from Juror #227, an alternate juror, and Juanita Smith, a good friend of Brockton's family who was present throughout the trial.  Juror #227 stated in her affidavit, in relevant part:
>
>> "Before the trial commenced, we (the jury) were given explicit instructions by the Judge in regard to what was required of us. Notebooks were made available for those who desired to take notes and directives concerning cell phones, talking among jurors, and reading newspapers.  We were told there was to be no cell phones on and if they were, we would be removed as a juror.
>>
>> "During the trial, I personally observed several jurors on their cell phones and one on the back row asleep.  This disturbed me because there was a significant amount of testimony we had to pay close attention to.  When we went in for deliberation, one juror (who was on the phone) says, I had to change my hair appt. and the other says, I had to find someone to pick up my kids.  I  observed a lack of concern for the case at hand.  I am honored to get this off my heart because it has troubled me since I observed the behavior of jury and conversations."

(C. 152).

Additionally, Smith submitted an affidavit which stated in pertinent part:

"On the first day of trial and while the jury was on break, I observed the victim's brother who is a police officer with Montgomery Police Department and who works with victims of rape speaking with the witness from the Department of Human Resources shortly before that witness took the stand and testified in the case. The witness was sitting in a chair located near the area where the courtroom is located.

"I also observed the MPD officer who is the victim's brother and an elder man engage in a conversation regarding the case while a juror was seated in a chair just outside of the courtroom. The young African American male juror was wearing khaki pants. The juror was sitting in a chair outside the courtroom, and he was taking notes. The portion I heard the officer say to the elder man whom I believed to be the victim's uncle was commenting that the Defendant's attorney 'couldn't break his sister's testimony.' The conversation was in process as I exited the bathroom. I am not sure of the length of the conversation. I believe that the juror heard the conversation because of where he was sitting. The bathroom is near the courtroom door and if I heard them so did he. These incidents took place during breaks in the case."

(C. 153).

The trial court held a hearing on the motion on March 1, 2018, during which Brockton called Smith and Juror #227 to testify. On direct examination, Smith reiterated her statement from her affidavit, but on cross-examination, Smith stated she did not know if Juror #19 had heard the conversation between the victim's brother and another individual. During the direct examination of Juror #227, she provided additional details to the particular instances of alleged misconduct that she observed. She stated that "throughout the entire testimony," one juror had his head down like he was asleep. (Corrected 2nd Supp. R. 47). During one of the breaks, that juror told the other members of the jury that he was asleep. Additionally, Juror #227 observed the juror who used her phone to reschedule her hair appointment have her phone in her lap and use it to send and receive text messages during the trial.

The State called Lieutenant Henry Wentland, who served as the bailiff during Brockton's trial. He testified that during the trial, he was either sitting or standing in a spot approximately 25 feet away from the jury box where he could observe the jury. Lieutenant Wentland stated that when he is standing, he has an unobstructed

view of the jury.  However, when he sits, a low banister can obstruct some of the juror's laps.  Lieutenant Wentland did not observe any jurors sleeping or on their cell phones during trial.  The State also called the victim's brother, Detective Jeremy Jones.  Detective Jones testified that he did not make any remarks about his sister's testimony in the courtroom or the hallway of the courthouse.  Finally, the State called Kayla McLendon, the victim's services officer with the district attorney's office.  Officer McLendon testified that she was present for the entire trial and sat approximately 10 feet away from the jury box.  She stated that she did not observe any jurors asleep or on their cell phones.  At the conclusion of the hearing, the circuit court took the matter under advisement.

After the hearing, the State filed a motion to supplement the record concerning its response to Brockton's motion for a new trial.  The State attached an affidavit from Juror #19, which stated in relevant part:

> "During the trial, at no time did I witness the elderly gentlemen sitting next to me sleeping.  In my opinion, everyone on the Jury was attentive during the trial and the case was taken with the upmost [sic] seriousness by every Juror until the very end, which took a high toll on all of us.  At no time did I ever take notes or discuss notes with anyone outside of the deliberation room for any reason whatsoever. We as Jurors stayed in the jury room and discussed the case only after the judge told us it was okay to do so.  At no time did I listen in or hear anyone discussing the trial with another person, nor witness anyone on their cell phone at any inappropriate times during the trial.  Every Juror handled their position appropriately and with the upmost [sic] seriousness for this case."

(C. 187.)  Brockton filed an objection to the State's supplement.  The motion [for a new trial] was denied by operation of law on May 1, 2018.

(Doc. 8-9 at pp. 11-14).

The Alabama Court of Criminal Appeals indicated it was referring to the following legal

principles in addressing Brockton's juror-misconduct allegations:

> "[A] defendant seeking a new trial on the basis of juror misconduct has the initial burden to prove that a juror or jurors did in fact commit the alleged misconduct." *Dawson v. State*, 710 So. 2d 472, 475 (Ala. 1997).  "[N]ot every instance of juror misconduct warrants a new trial."  *Reynolds v. City of Birmingham*, 723 So. 2d 822, 825 (Ala. Crim. App. 1998).  "The test for determining whether juror misconduct is prejudicial and, thus, warrants a new trial is whether the misconduct might have unlawfully influenced the verdict rendered."  *Id*. (citing *Roan v. State*, 225 Ala. 428, 143 So. 454 (1932)).

Rule 606(b), Ala. R. Evid., states in pertinent part:

> "[A] juror may not testify in impeachment of the verdict or indictment as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."

*See also Ankor Energy, LLC v. Kelly*, 271 So. 3d 798 (Ala. 2018) ("It is well settled that juror affidavits are inadmissible to impeach a jury's verdict. However, an affidavit showing that extraneous facts influenced the jury's deliberations is admissible." (citing *HealthTrust, Inc. v. Cantrell*, 689 So. 2d 822 (Ala. 1997)). With regard to the extraneous-prejudicial information exception in Rule 606(b), Ala. R. Crim. P., "'the courts of this state have generally limited the scope of this exception to the visitation of a crime scene by a juror, the introduction of the definition of legal terms in the jury room, and [the reading of] concepts from general reference books.'" *Bethea v. Springhill Memorial Hosp.*, 833 So. 2d 1, 7 (Ala. 2002) (quoting *Lance, Inc. v. Ramanauskas*, 721 So. 2d 1204, 1214 (Ala. 1999)). Additionally, when a juror has outside contact with an individual who is not a key witness and when that contact is not continual, then "[i]n order to be entitled to a mistrial due to contact by a juror with [the] witnesses or others, prejudice must be shown." *Minor v. State*, 914 So. 2d 372, 413 (Ala. Crim. App. 2004) (citations and quotations omitted). Further,

> "[i]n order to show prejudice in a case such as this one involving misconduct by a non-juror in speaking to a juror, a defendant must establish only that the verdict might have been affected by the juror's outside contact with the other person. ... [T]his might-have-influenced-the-verdict standard nevertheless requires more than a mere showing that the juror was exposed to outside influences."

*Minor*, 914 So. 2d at 413.

(Doc. 8-9 at pp. 14-16).

The Alabama Court of Criminal Appeals addressed the merits of Brockton's claims as to each alleged instance of juror misconduct:

A.

Brockton first claims that he is entitled to a new trial due to improper juror cell phone use during the trial.  In particular, Brockton claims that one male juror used his cellular telephone to arrange for childcare, and another female juror used her cell phone to reschedule her hair appointment.  Brockton also claims that the female juror who rescheduled her hair appointment had her cell phone in her lap and was sending and receiving text messages throughout the trial.

Here, Brockton had the burden of establishing prejudice, i.e., that the alleged outside contact might have affected the verdict.  *See Minor*, 914 So. 2d at 413.  However, the specific contact alleged by Brockton—a juror's arranging childcare and another's scheduling a hair appointment—does not suggest contact that might have affected the verdict.  Therefore, this claim does not entitle Brockton to any relief.

B.

Brockton next contends that the circuit court erred in denying his motion for a new trial because one juror was asleep during the trial.  At the hearing on Brockton's motion for a new trial, Juror #227 testified that one of the jurors appeared to be asleep "off and on throughout the entire testimony" during the afternoon of the first day of trial.  (Corrected 2nd Supp. R. 47–50.)  She admitted, though, that she did not see him sleeping, but rather that she saw him with "his head down."  (Corrected 2nd Supp. R.  46.)  Juror #227 also stated the juror in question told her that he had been asleep and announced to all the other jurors, "I don't care what you do; I'm tired; whatever y'all do, I'm with you."  (Corrected 2nd Supp. R. 33, 37, 39.)

In *Vanpelt v. State*, 74 So. 3d 32 (Ala. Crim. App. 2009), this Court quoted with approval the following holding of the Delaware Supreme Court:

> "'To warrant a new trial, defendants must demonstrate the juror misconduct resulted in prejudice that deprived them of the right to a fair trial.  To prevail on a sleeping-juror claim, the defendant must show that prejudice resulted from the jury ignoring "essential portions of the trial."  Thus, some courts have held that a new trial is not warranted where a juror slept through the jury charge, or even the "critical presentation of [defendant's] evidence and the cross-examination of witnesses for the prosecution."'"

*Vanpelt*, 74 So. 3d at 77 (quoting *Durham v. State*, 867 A.2d 176, 179–80 (Del. 2005) (footnotes omitted)).

Although questioned repeatedly during cross-examination, Juror #227 could not state with particularity the specific portions of trial allegedly missed by the juror's sleeping.  She testified generally that the juror had his head down "off and on

throughout the entire testimony," but, again, she could not tell if he was sleeping. Juror #227's opinion that he was in fact sleeping relied on the juror's allegedly telling other jurors that he had been sleeping; however, Juror #227 could not specifically recall when the statement was made.  (Corrected 2nd Supp. R. 50.)

Brockton failed to demonstrate that the juror in question ignored "'essential portions of the trial.'"  *Vanpelt*, 74 So. 3d at 77 (quoting *Durham*, 867 A.2d at 179-80).  As a result, this claim does not entitle Brockton to any relief.

C.

Brockton finally argues that the circuit court erred in denying his motion for a new trial because Juror #19 may have taken notes on a conversation that occurred outside of the courtroom between the victim's brother and another individual.  At the hearing on Brockton's motion for a new trial, Smith testified that she overheard the victim's brother, Detective Jones, repeatedly state to another individual that the defense attorneys "couldn't break his sister's testimony."  (Corrected 2nd Supp. R. 19.)  Smith testified that this conversation took place in a hallway outside of the courtroom within earshot of where Juror #19 was seated and taking notes.  Although Smith admitted that she was not certain whether Juror #19 had heard Detective Jones's remarks, she suspected that he did.

Here, Brockton failed to establish that Juror #19 even heard the alleged statement by Detective Jones.  As a result, this issue does not entitle Brockton to any relief.

(Doc. 8-9 at pp. 14-16).

A jury's verdict must be based only on evidence that comes from the witness stand at trial. *Turner v. Louisiana*, 379 U.S. 466, 472–73 (1965).  Prejudice is presumed if a defendant establishes that extraneous contact with the jury occurred.  *McNair v. Campbell*, 416 F. 3d 1291, 1307 (11th Cir. 2005).  When a defendant has made a showing of prejudice, the burden shifts to the State to rebut the presumption by showing that a juror's exposure to extraneous information was harmless to the defendant.  *Id.*

Here, the Alabama Court of Criminal Appeals analyzed the testimony and evidence in the record concerning Brockton's allegations of juror misconduct.  As to Brockton's claim of improper cell-phone use by two jurors, the state court found that, considering the nature of the extraneous contact alleged by Brockton, i.e., a juror's arranging childcare and another's scheduling a hair

appointment, Brockton did not show any juror exposure to extraneous evidence that might have affected the jury's verdict.  (Doc. 8-9 at p. 14).  Effectively, any extraneous contact involving the jurors was harmless to Brockton.[6]  As to Brockton's sleeping-juror claim, the state court noted there was conflicting evidence on whether the juror in question was in fact asleep, and that Brockton had failed to make the required showing that the juror ignored essential portions of the trial.[7]  (*Id*. at pp. 14-16).  As to Juror #19's alleged exposure to prejudicial extraneous information, the state court found that Brockton failed to establish that Juror #19 even heard the alleged hallway statements.[8]  (*Id*. at p. 16).

The findings by the state court as each of Brockton's allegations of juror misconduct did not result in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor did the state court's findings result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, Brockton is entitled to no relief.

---

[6] At the new-trial hearing, the State presented testimony from the bailiff at Brockton's trial and the victim's services officer, both of whom stated that they were seated relatively close to the jury box and that they saw no jurors using cell phones during the trial.  (Doc. 8-8 at pp. 93-94, 116).

[7] At the new-trial hearing, the victim's services officer testified that she did not see any jurors sleeping during the trial.  (Doc. 8-8 at p. 116).  Juror #19 submitted an affidavit stating that he saw no jurors sleeping during the trial.  (Doc. 8-1 at p. 187).

[8] As the Alabama Court of Criminal Appeals noted, Brockton's witness at the new-trial hearing, Juanita Smith, admitted on cross-examination that she was uncertain if Juror #19 heard the alleged prejudicial statements.  (Doc. 8-8 at p. 36).  The state court also noted that Detective Jeremy Jones, who, according to Brockton, made the prejudicial statements, testified at the new-trial hearing that he did not make the statements in question.  (Doc. 8-8 at p. 108).  Moreover (as also noted by the state court), the State submitted an affidavit from Juror #19 in which Juror #19 stated he did not hear the alleged prejudicial statements and that he neither took notes during trial nor discussed notes with other jurors.  (Doc. 8-1 at p. 187).

### III.    Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that Brockton's petition for writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and that this case be dismissed with prejudice.

It is **ORDERED** that any objections to this Recommendation must be filed by **May 12, 2023**.  An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection.  Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this 28th day of April 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**